Dacar v. Saybolt L.P. Whenever you're ready. May please the court. As the courts aware, this is an FLSA case in which the plaintiffs employees seek unpaid overtime pay that they claim was due to them based on the miscalculation and underpayment of their overtime wages during the period of time at issue in the case. The district court evaluated several issues on summary judgment and from our position got almost everything entirely right. In large part, most of the issues were resolved on default. Oh, that's right. You represent Mr. Descartes, right? Yes, this is I'm both the appellant and the cross appellate. Right, right, right. Yeah, I'm sorry. Yeah. I'll bet you do. So with respect to the issues that are actually preserved for appeal before this court, obviously we took issue with the court's finding on willfulness, three-year willfulness, also known as reckless disregard. And I'll go into that standard in a second. And I think the only other issue that was even preserved for appeal properly was the liquidated damages issue. Those are the only issues that were briefed properly before the district court. Well, I might take issue with all that, but. With regard to willfulness, which is the sole issue on our appeal as the appellant, the standard that's been set forth by the court, one of the similar cases is Singer on which Judge Davis was on the panel. Willful has been defined as new or showed reckless disregard for whether its conduct was prohibited by statute. Here, when we look at the undisputed facts, unquestionably, Saybolt's conduct in violating the FLSA meets the standard. And for that reason, the district court's award of summary judgment to Saybolt. Let me just ask you a question about willfulness, though, because, you know, from our perspective on the court of appeals, if we confront an issue for the first time and all that we see are three or four district court cases, is that a settled issue in our view? The answer is no. So if it's not a settled issue in view of the courts that are, for all practical purposes, the courts of final resort in the United States, why should it be a settled issue for purposes of willfulness? Well, I don't think that's necessarily the correct way to look at it for the willfulness evaluation here. Well, it's a common-sense way. But the way the case law, and specifically the case law of this circuit, has been developed, and this is universal from the Glauflin decision from the Supreme Court, willfulness has to do with the employer's state of mind, the knowledge that they have. Here, the only knowledge that Saybolt had was knowledge of 70 years of jurisprudence which said that their pay policy was illegal for specific decisions against their companies that were in their same industry. And given that they were district court opinions, that's true. But they all held uniformly that this identical pay policy was illegal. And most importantly, they sought out the opinion of two experienced labor and employment lawyers, and both of them said the only authorities that we are aware of, that we can tell you about, uniformly say that the way that you're paying is illegal. And they both said it was an unsettled issue. They actually said that in their testimony at deposition. They didn't say that to Saybolt. There was nothing in the record where those attorneys indicated that they said it was an unsettled issue with regard to that. That's why I was referring to the common sense of the matter. Well, but the attorneys only said they went to two different attorneys. The first attorney highlighted and emboldened a First Circuit decision which we rely on in other issues. Okay. Well, we understand. What else do you have to say about willfulness? Because there are a lot of issues here, and I do have serious questions about your waiver arguments. Okay. Well, I think that basically that's it. The two attorneys, while they may have thought that the issue was unsettled, they didn't communicate that to Saybolt, and there's no record evidence. I'm really not trying to be domineering, but you are repeating yourself, and that's all well-established law and clearly briefed. Okay. The only other thing I'll point out about that is that in its brief on summary judgment, as well as here in both its moving brief and its reply brief, Saybolt, and this is a quote from its reply brief, Saybolt is not running from these decisions, meaning the decisions that we've just discussed. It simply disagrees with them and believes them to be wrongly decided. That's not what — that doesn't defeat willfulness. In other words, they're acknowledging we always knew about all these cases. What's your best case where an attorney opinion like this saying, I don't think those district courts are right or it's not settled, still allowed the issue to go to the jury? In other words, it seems to me the willfulness is where the employer admits they violated or they previously had a pattern of violations or they have no records, but here they did what we want them to do. They go to attorneys. In your brief, it says the attorney said they were violating, but I don't think that's what they were ever told. They were told there are courts that might find you in violation. So I'm asking you, what case allows willfulness to go to the jury when attorneys consulted don't say you are violating? They say there are district courts that would hold you are. What's your case? First, I think that that's not exactly what happened here, because the O'Brien case was one of the cases that Mr. — and that's from the First Circuit, that's circuit law, that there was no dispute on that. That was a decision that he bolded and underlined for Saybolt, and that's the one that said this is illegal. He said that it raised red flags, and he told them that the only way to comply going forward were to ensure compliance. I guess you should get on to her area, because move off willfulness. Okay. And I will get a case for my rebuttal time. I'm not trying to run away from your question. No, that's fine. But I think those things in combination, they create an issue of fact. And this is summary judgment. Really what the standard is, it's a standard for willfulness, but it's a standard for all summary judgment under Rule 56. The question is, could a reasonable jury find under these circumstances that it was willful? Armed with the knowledge of all these things combined, could a reasonable jury find that this was willful? And clearly, we pointed out to several cases in our brief where under similar circumstances — Maybe you should just do me a favor and move on to fluctuating work weeks, which were hard for me to get my head around, but there's — the Department of Labor has had a difficult time telling us exactly what the test is. Where's the test You embrace, I guess, O'Brien. That's, you think, O'Brien. Yes. And I think that basically — and it's been codified in 778.114. We don't dispute that. We don't dispute that fluctuating work week is a permissible way to pay people. I'm just going to interrupt you there. Codified? Codified? It's a regulation. That's an important distinction. Yeah, but it's a regulation that was enacted contrary to the notice of rulemaking, right? No. There was a proposed regulation in 2008, right? Correct. The codified was more sympathetic to what they were doing, right? That's true, but it never went into effect. So that's never been the law. Yeah, and then the new regulation didn't come in until virtually the end of the period during which they were using this method, right? The new regulation came into effect in 2010, and they waited — I'm sorry, 2011. Yeah. And they waited until 2012 to make the change. Is it a new regulation, or just reasons why they didn't adopt the new — It's not — and the regulation itself says this. All the regulation did was cite the 70 years of case law that I was referring to before that uniformly says that defines what fixed pay for straight-time hours, what that means. Is it a regulation or, you know, like a policy statement? I mean, was it a notice and comment regulation? Yes. Both parties have briefed it as if it's the controlling rule, correct? Yes, and I — that's certainly how we would believe it to be, the controlling rule. And under that controlling rule and under all of the case law, basically forever, since missiles, since the fluctuating work week, the concept was ever created in the 1940s early on with the FSA, one of the prerequisites for its use has always been that you have to pay a fixed amount for straight-time hours. Well, and there's a difference between — I think what they would argue, although they didn't make this argument to the district court, I think what they would argue is, well, we paid some — a base amount. We paid a minimum amount. What do you mean they didn't make that argument? I mean, the whole point of liability was did they comply with a fixed work week or not, right? Correct. How could they not have made the argument most important to their defense? It's — and perhaps it's shocking, but I think if you read their — I know you did read their papers, but that's why — We didn't necessarily read all their papers because we, you know, we had a lot of cases. So I — that's why I — the one thing that I printed out for the panel and which I gave to my co-counsel to ensure that we were all reading and digesting, because I was shocked when I read their brief and read what they said they argued before and why those arguments were preserved, I scratched my head and said, were they at the same summary judgment proceedings that I was at? Because what they're saying their brief said, there's such a divergence from what they actually say. And so I produced for the Court an actual copy of their response to Plankton's motion for summary judgment. There is a header that says — that argues that they paid a fixed amount for straight time hours or what they call fixed salary. There is that header. But when you actually look at — and this is — that argument can be found on the Record on Appeal, page 3178, or page 9, starting on page 9, 10, and it goes through the top of page 11, that's their limited argument regarding fixed pay for straight time hours. And if you — and what it actually says, the only thing they argued is we had good faith, we went to — we went to attorneys, and they told us it was okay. And the only thing they argue about is they say that, based on the record, they dispute the plaintiff's position that they made deductions to the amounts. But they don't say anything about the addition of bonuses that equated with specific hours worked, all of which had always been found to be in violation of the fluctuating workweek. They don't even address that issue. And that's, in large part, what that — that's — that's, in large part, what the issue was here. That's what the two attorneys advised them about. That's what their competitors' lost cases about that they were aware of. It was this payment of money that was associated with specific hours where courts said that's completely inconsistent with saying that this fixed amount of pay is going to cover all hours worked because then why are you paying them additional hours for additional — for other straight-time hours? And it's undisputed that they paid them that here. Roberts. A superior performance would be okay, or a Christmas bonus if you don't work on Christmas, as long as it's not paid for hours. Those are permissible. That's Lally and — Clement. Yes. And that's — and that's what they've talked about. And that's a different issue because that's not associated or tethered to specific hours of work. And so it's not inconsistent with the claim or with the fluctuating workweeks language about a fixed amount, regardless of which hours you work, few or many. Here, these amounts are tethered to the hours worked, and so the amounts can't be said to be paid, whether the amounts are for few or many. And with regard to the deduction issue, I'll address it briefly. I know that the court essentially below said there was an issue of fact on that, and the issue — I'm sorry, the decision doesn't rest on that issue. However, if you look at the reply brief that Sable filed here, they acknowledge, even in their papers, they pick 25 weeks, 13 weeks from one of the plaintiffs, 12 weeks from a second plaintiff, which they say, look, this shows that they were But then you look at the charts, and in both the charts, there's a week where a person worked something less than 40 hours, and they were paid something different than the amount that they say was the fixed amount. All I saw was the column that showed the same amount of money every week. No, I believe it was on page 9 of their brief. They dropped a footnote to explain, well, this is OK because this is actually more than what the person would have gotten if they had gotten the flat. Well, they cite something that you — I mean, some summary of — you said some — you supposedly put in a 300-page exhibit, and they showed here's the bottom line of what these people were paid according to their pay stubs, and it's always the same amount. If you look closely, it's not the same. Well, we'll take your word for it. You've used up all your time. But the issue with regard to fixed — I think — The other issue I was interested in in this case was the calculation of damages. Sure. I think that — It's late. I'm sorry? You have one minute. OK, and I'll address that quickly. That clearly has been — they've been estopped. We briefed this for summary judgment. There's no such thing as estoppel in this context. Now, there may be — I mean, whether there's untimeliness or not based on the record is one thing, but there's clearly not judicial estoppel because they did not prevail. And I — there's a decision directly on point with regard to that issue, and that's the Hall case. I believe you sat on the panel on that case. That case cited the Hidden Oaks case, which can be found at 138 F. 3rd, 1037. The specific pencil is on page 1047 for the — and that's the answer to the proposition that judicial acceptance does not mean that the party against whom judicial estoppel is to be invoked prevailed on the issue. What it actually means is it's — it applies whenever a party makes an argument with the intention that the court will rely on that argument. Here, there's no question that that's what happens. The defendants argued, yes, we agree the denominator should be 40 hours. We just think that these bonuses shouldn't be — and they never made an argument But I don't understand why that doesn't preclude them. When they lose on that, why can't they fall back to another position? Because they never made any alternative argument. The cases that they cited — Well, okay. You've used up your time. You have time for rebuttal. You can bring it up on rebuttal. Ms. Griffith. Your Honor, it's Vanessa Griffith on behalf of Sabolt L.P., which is both the Ampli and the Cross appellant. I'd like to first turn to the issue of damages, both the question of whether Sabolt is precluded under various doctrines that were raised by plaintiffs from challenging the damage model that the court, district court, relied on in entering judgment in this case, and then the actual merits of that argument. First, with respect to waiver, so there are three doctrines that really are at play here, waiver, judicial estoppel, and invited error. Waiver, which was not what the district court found, does not apply in this case for a couple of reasons. First, there's no final judgment. The district court's entry of judgment — Why don't you start off by explaining what it is you are contending is not waived or estopped or whatever. In other words, what theory of damages are you relying on here? Yes, Your Honor. The theory of damages, that is, the correct theory of damages, is what Sabolt introduced in the subsequent briefing that it filed in August of 2016, and there are really two components. The first is, if we assume that the trial court was correct in finding that the fixed-wage fluctuating work week was not met in this case, there remains the question of what are the plaintiff's damages. And damages under the Fair Labor Standards Act are the overtime that the plaintiffs are owed, no more and no less. And overtime is determined in relation to the regular rate. So the first question is, what is the proper regular rate? And then the second question is, once you determine what the proper regular rate is, do you multiply that by 1.5 or .5? So there are two issues. So with respect to the first, the question of what the regular rate is, there is a regulation that is directly on point in defining this. And if I may make a brief tangent, the regulation that we are talking about, 778.114, which pertains to the fixed-wage fluctuating work week, is not a notice and comment regulation. It's an interpretive guidance. The Department of Labor's 2008 proffer to amend it was going through notice and comment during this time period and would have been a notice and comment regulation had that process been followed, but instead it was pulled, and so 114 remains an interpretive guidance. But you've briefed it as if 114 governs. I do. I don't take issue with the language of 114. I think the language of 114 is generally consistent with overnight transportation versus missile, which is the Supreme Court case that actually established this. And so with respect to the regular rate, it's defined in the regulations and it's defined in the case law. And, again, it's really not very controversial that the regular rate is all remuneration. And that's actually, I don't think, controversial in this case. The divisor is divided by the number of hours worked for that compensation. So, for example, if they worked a 40-hour work week, if we told them it was a 40-hour work week, we had an agreement to work a 40-hour work week, the divisor would be 40. But in this case, that divisor is the number of hours actually worked. And this court has actually already decided that in the context of a misclassification case. So in those kinds of cases where you have an individual who is improperly misclassified as exempt, the court faces the challenge of, how do you determine damages in that situation? And what this court has held, and this is the Ransom v. Patel case, what this court has held is that you look at what the salary was compensating the individual for. Was it compensating them for all hours worked? Was it compensating them for a 40-hour work week? Was it compensating them for a 47-and-a-half-hour work week? Whatever the parties agreed. And that number is the divisor. And interestingly enough, in that case, the issue is, what are damages when an employer has clearly violated the law, an issue on which the employer bears the burden of proof, and where exemptions are just that, they're an exemption from the Act. That's important because the fixed-wage fluctuating work week is not an exemption from the Act. It's an issue on which the plaintiff bears the burden of proof because it stands side by side with all of the other means by which overtime can be calculated. Time and a half when you're paid on an hourly basis is one. I thought you were trying to compute overtime when the FWW is not applicable. You said assume the district court is right here. Right. Yes, Your Honor, correct. And maybe I'm getting there a bit slowly. So if the district court is right, then the question becomes, what is the regular rate? The regular rate would be all of the compensation that the plaintiff's earned on any particular work week, and then all of the hours that the plaintiff worked for that compensation, which in this case we know ranged up to as many as 80 or 90. According to the plaintiffs, they worked sometimes 80 or 90 hours in a work week, and according to Mr. Ravia, the named plaintiff, he knew that his compensation covered him for that work week. Well, I mean, the bottom line, in other words, what you're contending for in this court is what I would describe as your position number 2 in the district court. That's correct. The position that was clearly articulated in the August briefing following the initial entry of the summary judgment order, but before any final... In other words, not based on 40 hours, but based on all of the hours were and one half. So once you make that calculation, that division, which is all the payment, which included the so-called bonus or premium hours, divided by the hours actually worked, you would add one half per extra hour as the overtime, right? That's correct. You would take that regular rate, multiply it by half. And that results in a damage calculation that is around one-fifth of their damage calculation. It is substantially less, Your Honor. I do not actually know what the number would be. That's not in the record. That's one thing that was causing me, at least, to struggle greatly with your argument, or with the whole case. But they're saying that you either waived it or were stopped or invited error or something because of your previous position. Let's assume it was a 40-hour work week. That's correct. So get to that. On that issue. So first, with respect to waiver. On the issue of waiver, the issue is only raised if the district court did not have a chance to consider the issue. This issue was raised before final judgment. It was raised essentially following an interlocutory judgment. Rule 54B says when there's an interlocutory judgment, the order is subject to revision at any time. This is not a situation in which we raised it after trial or after judgment. It was raised before. And in fact, just the chronology indicates this. The summary judgment order was issued in December of 2015, and the court did not actually enter a final judgment until October of 2016. This is not a situation in which there was a mere ministerial act following judgment and the judge just added up some numbers and found it. There was a significant period of time following that order, this interlocutory order. So there isn't waiver when the issue was raised before the judgment. There are court cases, in fact, and this Court has found even post-judgment that an issue may not be waived. But in this case, this is not post-judgment. So that's the issue of waiver, Your Honor. The Court, interestingly enough, did not even find that we had waived the argument. The Court instead opted to find that we were judicially estopped, which does require as one of the elements that we prevail. It may not require that we prevail ultimately, but it certainly requires that we prevail on the matter that we asserted the first time around. As in the Hall case, the plaintiffs prevailed simply on a position that resulted in the trial court dismissing a potential defendant that would have confused the proceedings and added an additional potential third-party defendant. So the plaintiff was able to successfully leverage their argument into a more advantageous trial arrangement. That's what the Hall case was. And, of course, it would be the unusual case in which a $7 million judgment was entered against an entity that prevailed, and that led not circuitously but directly from this finding. And then finally, with respect to the issue of invited error, that's just a rule of appellate review. It's not something that the district court concluded was applicable. And in this case, even if, which we dispute, there was an error in our initial damages model, it was corrected. So no error was invited. The Sierra Club v. Yetter case deals exactly with that issue. When an issue has been corrected, then on appeal, the invited error doctrine is not applicable. So, Your Honor, none of these doctrines preclude this court, or the district court, for that matter, from considering the merits of Sable's damages argument. And with respect to that damages argument, a few other points I'd just like to make, and then I'll move on to the actual liability issue. The issue of damages is an issue of law for the court. It's not an issue for the jury. The calculation may be, but the actual issue is something that the court should be deciding. These cases should be decided on the merits, if at all possible. These doctrines of waiver and judicial stoppable and invited error are certainly important for the court to be able to police the parties in front of them. But in this case, before a final judgment was ever entered, the matter was fully briefed, and the court declined to find waiver and instead found a doctrine that really has no applicability under these circumstances. I'd like to turn briefly, Your Honor, to the issue of liability. So... Let me just ask you one thing on damages. Why doesn't the Brantley court's model make sense? Basically, as I understand it, what they said was that since the FWW is not applicable, we revert back to the default rule. And we take the regular pay the man was to get, salary, whatever we're going to call it, and we assume that's a 40-hour week. And so we divide 40 into that amount of money, and that's his regular rate, and then we pay him time and half for overtime. Well, Your Honor, a couple of points. The Brantley case, which I believe is the Brantley v. Inspectorate case, actually went halfway between the two models. So in that case... But let me address the question you raised more broadly. The notion that 40 hours is somehow a default is the wrong premise from which this argument should be made. 40 hours is simply the number of hours that the statute says overtime must be paid above. That is all it is. There's no default that we calculate overtime based on time and a half over 40. That is certainly one of the methods, and it is indeed a very common method where you pay people by the hour, divide by, or, you know, determine the rate based on the 40 hours and do time and a half. But it is not the only method. And this Court has made that clear, especially in the Sampson v. Apollo case when it talked about how the burden is on the plaintiff, because this is not an exception to the rule. So it takes us back, Your Honor, to the question of what is the regular rate. And since damages under the statute must be calculated based on the regular rate, the question is not whether we should consider 40 hours. The question is, what is the regular rate? And to that we look at the decisional law and the regulation, both of which require the divisor to be the amount of time... That's for the FWW system, right? No, that's the definition of regular rate in all contexts under the Fair Labor Standards Act. The regulation defines the regular rate in general because it's a term that's used throughout the statute. And the process is this. The private right of action is that the plaintiff may recover overtime. Overtime is defined as time and a half the regular rate. Regular rate is defined as all compensation divided by all hours worked for that compensation. That's 109, right? Yes, Your Honor. So that's the step. And the notion that there's a default I think is simply an incorrect analysis of the issue that stems from, frankly, a belief that the fixed-wage fluctuating workweek method is somehow a deviation or an exception to the statute, which it's not. Which it can't be because the regulation specifically allowed it. Well, indeed, Your Honor. And, in fact, the Supreme Court's decision on it predated the regulation and came directly from the statute. And when you read a lot of those cases, a lot of the cases that plaintiffs rely on for the notion that you should divide by 40, you should go to this default, stems from a couple of things. One, some of them stem from the misclassification argument that we talked about, that this Court has already resolved. They also stem, frankly, from a belief that the FWW is a non-preferred, problematic method, which is a position, for example, that the DOL has taken recently. But it doesn't change the fact that it's not. It's co-equal with these other methods of calculating damages. But am I wrong that if the company's just mistaken in good faith and, therefore, it isn't appropriate to use FWW, how would you then be able to use a damages model that's key to the FWW? It's not key to? It's not key to the FWW. And what's the best case that says that? I know you're saying that. I'm just listening. Well, I think the best case that says it is probably the missile case, the overnight transportation versus missile case. The original Supreme Court. Yes, Your Honor. And the regulation, which defines the regular rate, to include remuneration for all, total remuneration divided by total hours worked for that remuneration. And then there are numerous cases that talk about just the notion that you look toward what the parties have agreed to, and that's the proper method of determining the regular rate. So you would also consider, Your Honor, the Fifth Circuit's decision in the Ransom versus Patel case, which is the misclassification case. This Court, the Fifth Circuit, has not addressed this specific issue, to my knowledge. I think we probably wouldn't be here if you had. So you have to look at the cases that kind of move around the edges of it to get at the issue. I think what may be also helpful in thinking about this is the issue of liability. So, for example, I'd like to talk briefly about the Lally versus GNC case. That's the case in which the Court held, the First Circuit held, that there is somehow a distinction between paying premiums for bonuses or commissions and paying premiums because you're working offshore or you're working at night. That's a value judgment that has no foundation whatsoever in the statute, in the regulations, in any of the Supreme Court decisions. It reads a prohibition into the statute that's improper. That's improper. What it does is untether the additional compensation from the hours, whether we're offshore or when, weekends, holiday. The notion that paying a bonus for performance is somehow untethered from hours in a way that paying a bonus for working offshore, they may be different in terms of where they fall on the sliding scale of payments, but they're both premium payments. In other words, you're 52-week. If I understood your brief correctly, the base salary here was an amount certain per week, even if the inspector was only working 15 hours. That's correct. And 80 or 90 hours another week. When you added the bonus payments to that amount certain  then you're increasing the salary off of which you calculate overtime, right? Correct. And so that's where you... And the fluctuating, you may not have done that correctly, but that's why FWW says that you only pay one half for the extra hours instead of time and a half. That's correct, Your Honor. And, in fact, you know, in the Lowley case, the court upheld the application of the FWW when there was a fixed salary and commissions, commissions that are attributable to a specific work week. But it approved of O'Brien with language that would be exactly inconsistent with what happened here. Right. Agreed. And, in that case, the court's drawing a distinction between somehow we pay someone a commission for working these 40 hours really hard and we pay someone a premium for working those 40 hours offshore, that those are materially different. They're not. Now, it would be one thing... On liability, actually... We're equally not bound by either Lowley or O'Brien, right? That's correct, Your Honor. But your argument on liability would ask us to create a split with O'Brien. That's correct. I believe O'Brien is... You have just 30 seconds on willfulness. You aren't asking for a rule of law that says whenever you consult and the attorney doesn't say you're presently violating, there couldn't be willfulness as a matter of law? Absolutely not. Okay. Under these facts. Yeah. Multifactored. These attorneys, Mr. Ivey from this district, told Sabolt not only about those three decisions but about the DOL pending regulation that said the law allows these. It wasn't a change in the law. I agree. It allows these. Last quick question. Likewise, you're not asking for a rule of law that says you could only be willful when there isn't binding authority against you? I don't think so, Your Honor. I think that that would be a very material fact but not dispositive. Thank you, Your Honors. All righty. Answering first the question about willfulness that was posed in my primary argument, there are three cases that we rely upon as our primary for our primary argument. One, I believe you said on the panel, Judge Higginson, which was Mohammadi. That is 171 — I'm sorry. That is 2017 West Law 318645. That stands for the proposition that defendants' FLSA violations are willful where there's evidence that supported a finding that they were aware of the FLSA provisions that were governing the situation, and they firmly attempted to avoid complying with them. I think that's certainly the case here. Two cases are similarly directly on point. There's one from the Third Circuit, the Martin v. Selka brothers case. That can be found at 949 F. 2nd 1286. That's a case where willfulness was found where an FLSA violation continued and was found willful despite doubts that it was viable or legal. That's exactly what happened here. There certainly were planted a doubt, the seed of doubt, as to whether it was a — On the liability question, I hope you're going to save time to get to that. Yes. Just as raised now, with the point being there isn't a material distinction between special compensation, LALI, and ours. Oh, there absolutely is. And every case that I've read, for the most part, including LALI, as you pointed out earlier, has made that distinction. They've said that where you have shift differentials, including the Seventh Circuit and HEDR, a case we haven't really talked about much, but the same — that followed O'Brien. The only two cases on point on this issue were shift differentials directly tied to the hours worked. That's money for hours worked, and it's entirely different than performance-based compensation. And virtually every case with very limited differences has said that that's the law. And that's consistent with the FWW, as has always been the case. A few points of clarification. The defense counsel or appellee counsel said that the calculation of damages here was not just ministerial. In fact, here it was. If you go back and look at the transcript of the hearing that was held in August 2016, which resulted in the briefing, the plaintiffs took the position that we're taking now, this issue has already been resolved on summary judgment. Judge, you granted summary judgment on all issues with the exception of willfulness. The defendant, on the other hand, said, oh, no, we don't think so. Even though we didn't brief that issue and we really didn't, we argued that 40 hours should be the divisor, now we're saying something different. We want an opportunity to say something different. And what ended up happening was the parties did brief those issues. With the plaintiff briefing the issue, saying that the defendants were stopped and they had waived that argument because they had agreed on the 40-hour divisor, the defendants did not respond to that. They did not respond to plaintiff's brief in that respect. What they said — I'm sorry? Yes. And they also, contrary to the cases cited in their brief, they never moved to vacate the judgment, either the initial judgment or the final judgment. They never moved for reconsideration. With so little time, I'd love to — because it is hard. This is a hard issue for me, the damages. Why not just make a case for why Brantley, had it been preserved, not forfeited, not invited? Why is Brantley the preferred method? I think the way that Judge Davis described it, it should be. I mean, I think you combine all the wages. You go back, you divide by 40, and you recalculate the wages and you set it off by — But isn't there an un-reality? That's what I understand the judge did here. But that means that you are taking — you are skimming the cream and ignoring whatever is not the cream because you are getting two-and-a-half times, according to them, what the ordinary 40-hour hourly rate would have been. That's according to them. That's if you went back in time. But in fact, what happened here — But you're also creating a gigantic differential between what these people were getting and what Sable was paying the non-FWW inspectors. Is that not correct? That's true, but that depends on the argument here, Your Honor. But that's — What the FWW results in, if it's normally applied, and I understand it's legal, it results in overtime payments to the employees that receive it of less than one-third of what they would receive. Except for the fact — Except for the fact that the way they are calculating it includes all the bonus payments and therefore expands the pay base over what it would have been. Right, but the case law is clear. You can't go back and say, Well, we knew we were violating the law. We thought we might be violating the law. The point — excuse me. Now, wait. You're confusing willfulness with the proper calculation of what would time-and-a-half — what would overtime have been. And so, you know, you've got liquidated — nobody's even argued about liquidated damages here. So you're going to get double. So that's the penalty that the law prescribes, apart from willfulness, which has, you know, been argued here. So all we're trying to do is an exact calculation, as close to exact as possible. And I think one of the issues here — You get no more than 30 seconds. The reason why — and it is definitely tied to willfulness, as you pointed out, Your Honor. But I would point out, and this is in the record, Attorney Ivey specifically told the defendants when he warned them that they were likely violating the FLSA, or as I read it — Okay. We've had — no. Your Honor, can I please? No. He told them that the recalculation of overtime would be done exactly using the method the Court found was applicable. That's what he told them. Then they arguably — or they either did or didn't, you know, violate the FLSA. Stop. Stop. Stop. But they knew — Stop. My suggestion to you for the future is that when people in the Court are giving you signals about what you've argued sufficiently, that you have argued it sufficiently. And I — in this last deal, you just willfully misunderstood what I said, and I'm sorry about that. But we certainly have your argument. It's a very interesting case, and we will seriously review every bit of it. Court is in recess. Thank you.